[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 14, 2004
THOMAS K. KAHN
CLERK

_____

No. 04-11018
Non-Argument Calendar
_____

D. C. Docket No. 03-00069-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

DONALD WAYNE STUART,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(September 14, 2004)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

This appeal by the government presents two issues, the first of which is an

issue of first impression in this Circuit: (1) whether the district court erred in granting a downward departure for preindictment delay; and (2) whether the district court erred in granting a downward departure for extraordinary postoffense rehabilitative efforts when the defendant had a criminal history category of I. Because there is no evidence that the defendant was prejudiced by the preindictment delay and the departure for postoffense rehabilitation was foreclosed by binding precedent, we vacate the sentence imposed by the district court and remand for resentencing.

## I. BACKGROUND

On March 6, 2003, a federal grand jury returned a six-count indictment against Donald Wayne Stuart for transporting child pornography in interstate commerce in violation of 18 U.S.C. section 2252A(a)(1), receiving child pornography through interstate commerce in violation of 18 U.S.C. section 2252A(a)(2), and four counts of possession of child pornography in violation of 18 U.S.C. section 2252A(a)(5)(B). On May 5, 2003, Stuart pleaded guilty to count three of the indictment, possession of child pornography, in a written plea agreement.

At the sentencing hearing on August 5, 2003, the district court adopted the factual findings in the presentence investigation report and adopted the guideline

application recommended by the presentence investigation report. Stuart's adjusted offense level was set at 25 and then reduced by three for his acceptance of responsibility for a total offense level of 22 and a criminal history category of I. Under the 2000 Sentencing Guidelines, the appropriate sentencing range for Stuart, based on his offense level and criminal history category, was 41 to 51 months of imprisonment, two to three years of supervised release, a $7500 to $75,000 fine, and a $100 special assessment.

After hearing from several witnesses on mitigation of sentence, the district court expressed concern over several facets of the case. The district court stated that the crime was out of character with the rest of Stuart's life and two and a half years had elapsed from the date Stuart was first interviewed about his crime until he was indicted. The district court then continued the hearing and instructed counsel for Stuart and for the government to confer and provide the court with any basis on which he could depart from the sentencing guidelines.

At the sentencing hearing on January 28, 2004, Stuart moved for downward departure on two grounds. First, Stuart argued that the delay of two years between his offense and the indictment against him was cause for departure. Second, Stuart argued that his postoffense rehabilitative efforts were grounds for departure. The government objected to departure on any ground.

The district court granted the motion for downward departure on both grounds advanced by Stuart and sentenced Stuart to 21 months of imprisonment. In support of the departure for preindictment delay, the district court stated that Stuart had "this thing hanging over his head for two years wondering, what's going to happen to me? Am I going to be indicted? Am I not going to be indicted? What am I going to be indicted for if I am indicted?" The court asserted, "[A]ny judge, any appeals court judge, any prosecutor knows that the government could have easily gone forward with this case in 30 days or less." The court concluded that "[w]hile ordinary accidents of acceleration or delay are found to be a part of the criminal process, extreme delays are another matter. The [c]ourt does not find the delay in this case to be ordinary in the fabric of criminal proceedings."

Although the prosecutor explained that the postal inspectors' analysis of Stuart's computer had been delayed by devoting their limited resources to higher priority investigations related to the attack of September 11, 2001, and mailings of anthrax, the district court stated that it did not believe the explanation. Stuart, however, did not present any evidence of an improper motive for the delay. The district court did not find any improper motive to be the cause of the delay.

The district court did not find that the delay prejudiced Stuart in his defense against the charges nor in the sentence that he received. Stuart had not been

4

arrested when he was questioned by postal inspectors two years before his indictment, and Stuart remained employed during that period. The use of the 2000 version of the Guidelines Manual avoided any issue of ex post facto punishment. Stuart did not present any evidence of prejudice to his sentence as a result of the delay.

With regard to the postoffense rehabilitation, the district court identified three factors that supported its finding that Stuart's rehabilitation efforts were remarkable and his positive behavioral changes were extraordinary. First, Stuart voluntarily enrolled himself in counseling for sexual offenders within days of his initial contact with the authorities and continued in the program for over two and a half years without incident. Second, Stuart maintained steady, gainful employment and had strong community and family support. Third, Stuart complied with all the conditions of his pretrial release. The district court concluded that "the defendant [had] demonstrated for a period of almost three years that he is committed to becoming a responsible citizen again."

The district court also examined the factors listed in 18 U.S.C. section 3553(a) before deciding to depart. The district court found that the severity of Stuart's offense was mitigated by his lack of criminal history and the lack of identifiable victims. The district court also found that reducing the sentence would

not create an unwarranted sentencing disparity in the light of Stuart's efforts to avoid becoming a repeat offender.  The district court, therefore, departed to a term of imprisonment of 21 months and a fine of $1000.  Other conditions of Stuart's sentence include a special assessment of $100, and a term of supervised release for three years with 200 hours of community service during the first 12 months.  The government appealed.

## II.  STANDARD OF REVIEW

When a sentence is outside the guideline range, we review the application of the sentencing guidelines by the district court de novo to "determine whether a departure from the standard range is based on a factor that: 1) advanced the objectives of federal sentencing policy; 2) was authorized under 18 U.S.C. § 3553(b); and 3) was justified by the facts of the case."  United States v. Mandhai, 375 F.3d 1243, 1248-49 (11th Cir. 2004).  See 18 U.S.C. § 3742(e)(3).  "A court must impose a standard range sentence unless there exists a 'mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'"  Id. at 1249 (quoting U.S.S.G. § 5K2.0).  "As the party seeking the adjustment to the sentence, [Stuart] had the burden of proving, by a preponderance of the evidence, that [he] was entitled to the

6

departure." United States v. Onofre-Segarra, 126 F.3d 1308, 1310 (11th Cir. 1997). Any "factor which removes the case from the heartland of the guidelines and warrants a downward departure must be supported by evidence in the record." United States  v. Kapelushnik, 306 F.3d 1090, 1095 (11th Cir. 2002).

### III. DISCUSSION

Both of the departures were improper.  The departure for preindictment delay was unsupported by any evidence of prejudice to Stuart.  The departure for extraordinary rehabilitation efforts flatly contradicted binding precedent.  We address each error in turn.

*A. Preindictment Delay*

This Circuit has not decided whether preindictment delay is a valid basis for departing downward, and nothing in the guidelines expressly addresses this issue. Every other circuit that has considered this issue has determined that preindictment delay may support a downward departure.  See United States v. Dote, 328 F.3d 919, 925-26 (7th Cir. 2003); United States v. Los Santos, 283 F.3d 422, 428 (2d Cir. 2002); United States v. Sanchez-Rodriguez, 161 F.3d 556, 564 (9th Cir. 1998) (en banc);  United States v. Brye, 146 F.3d 1207, 1213-14 (10th Cir. 1998); United States v. Saldana, 109 F.3d 100, 104 (1st Cir. 1997).  The standard for a departure for preindictment delay is uncertain, however.

Despite that uncertainty, no circuit has allowed a downward departure on the basis of preindictment delay alone, absent prejudice to the defendant, and no circuit has allowed a downward departure without unreasonable delay or bad faith. In Dote, the defendant lost the opportunity to receive a single enhanced sentence because of the timing of his second indictment. The Seventh Circuit affirmed the refusal of the district court to grant a downward departure based on delay. The court found that the government was justified in waiting to obtain a second indictment of the defendant because the criminal activity relating to the second indictment was ongoing at the time of the defendant's first sentencing. Dote, 328 F.3d at 925-26. In Los Santos, the Second Circuit vacated the downward departure granted by the district court because the delay in prosecution was reasonable. 283 F.3d at 428. The court held that "in order for a district court to depart . . . based on prosecutorial delay that resulted in a missed opportunity for concurrent sentencing, the delay must either have been in bad faith or have been longer than a reasonable amount of time for the government to have diligently investigated the crime involved such that the delay takes the case out of the heartland." Id. In Sanchez-Rodriguez, the Ninth Circuit affirmed the grant of a downward departure when due to an "entirely arbitrary delay" by the government the defendant lost the ability to serve his state and federal sentences concurrently. 161 F.3d at 564. The Tenth

8

Circuit, in <u>Brye</u>, recognized that preindictment delay was a valid reason for departure although not warranted by the facts because the delay that Brye suffered was "'neither extreme not implicitly sinister,' but rather the type of delay that is ordinary in 'the fabric of criminal proceedings.'" 146 F.3d at 1213-14 (quoting <u>Saldana</u>, 109 F.3d at 104). Likewise in <u>Saldana</u>, although the defendant lost the opportunity to serve concurrent sentences, the First Circuit affirmed the denial of a downward departure for delay when the delay "was neither extreme nor implicitly sinister." 109 F.3d at 104. The court noted, however that a "careless or . . . innocent delay" could produce sentencing consequences so unfair that a departure would be permissible. <u>Id.</u>

We need not decide whether preindictment delay is a valid basis for departure nor whether that departure would require a finding of unreasonable delay, because this record does not justify a downward departure under any standard. We hold that, at a minimum, a downward departure for preindictment delay would have to be predicated on some prejudice to the defendant, and there is no evidence of prejudice to Stuart from any delay. The district court, therefore, erred in departing downward for preindictment delay.

*B. Postoffense Rehabilitation*

The second departure for the alleged extraordinary postoffense rehabilitation

of Stuart was flatly contrary to our precedent. Ordinarily postoffense rehabilitation is taken into account by the acceptance of responsibility reduction that Stuart received under U.S.S.G. section 3E1.1. United States v. Pickering, 178 F.3d 1168, 1174 (11th Cir. 1999). Although a "'truly extraordinary post-arrest pre-sentence [rehabilitation] may exceed the degree of [rehabilitation] contemplated in section 3E1.1 and therefore justify a downward departure,'" id. (quoting United States v. Williams, 948 F.2d 706, 710-11 (11th Cir. 1991)), any departure for postoffense rehabilitation must occur along the horizontal axis for criminal history. Pickering, 178 F.3d at 1175. As a defendant who was already at the lowest possible criminal history category (category I) on the horizontal axis, Stuart was not eligible for an adjustment for postoffense rehabilitation. United States v. Mesa, 247 F.3d 1165, 1171 (11th Cir. 2001).

## IV. CONCLUSION

Because the record does not justify a downward departure for either preindictment delay or extraordinary postoffense rehabilitation, we vacate Stuart's sentence and remand for resentencing consistent with this opinion.

**VACATED** and **REMANDED**