[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-17139
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 13, 2009
THOMAS K. KAHN
CLERK

_____

D. C. Docket No. 07-00191-CR-19KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DERRICK WILLIAMS,
a.k.a. Derrick Leon Williams,
a.k.a. Derrick L. Williams,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 13, 2009)

Before TJOFLAT, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

A Middle District of Florida jury found Derrick Williams guilty of knowingly possessing a firearm and ammunition as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), and the district court sentenced him to prison for a term of 120 months. He now appeals his conviction and sentence. We affirm.

I.

Williams appeals his conviction on the ground that the prosecutor's comments in closing argument to the jury were inappropriate and require reversal. We review a prosecutorial misconduct claim de novo because it is a mixed question of law and fact. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006). "Reversal on the basis of prosecutorial misconduct requires that the misconduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." United States v. Weinstein, 762 F.2d 1522, 1542 (11th Cir. 1985) (quotation omitted), modified in other respects on rehearing, 778 F.2d 673 (11th Cir. 1985).

"To establish prosecutorial misconduct, '(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant.'" Eckhardt, 466 F.3d at 947. (citation omitted). "In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the

context of the trial as a whole and assess their probable impact on the jury."

United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998).

To meet the substantial prejudice prong, the improper comments must have "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (quotation omitted). We have said that "[a] defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." Eckhardt, 466 F.3d at 947. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Eyster, 948 F.2d at 1207 (quotations and brackets omitted).

"[A] prejudicial remark may be rendered harmless by curative instructions to the jury." Weinstein, 762 F.2d at 1542; see also United States v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990) (stating "[b]ecause statements and arguments of counsel are not evidence, improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered"). The jury is presumed to follow the court's jury instructions. United States v. Stone, 9 F.3d 934, 940 (11th Cir. 1993).

A direct reference to a defendant's failure to testify clearly violates the

defendant's Fifth Amendment right against self incrimination, entitling him to a new trial, but an indirect reference to such failure is not reversible error per se. United States v. Norton, 867 F.2d 1354, 1364 (11th Cir. 1989) (citing Griffin v. California, 380 U.S. 609, 612-14, 85 S.Ct. 1229, 1232-33, 14 L.Ed.2d 106, 108 (1965)).  Instead, the impact of the statement must be assessed in terms of the context in which it was made.  Norton, 867 F.2d at 1364.  A comment will not be deemed an impermissible reference to a defendant's silence unless "(1) it was the prosecutor's manifest intention to refer to the defendant's silence or (2) the remark was of such a character that the jury would 'naturally and necessarily' take it to be a comment on the defendant's silence." Id. (citation omitted).

Although Griffin prohibits comments that suggest that a defendant's silence is "evidence of guilt," a prosecutor's comments that concern a defendant's credibility as a witness are permissible, as this approach is "in accord with [the] longstanding rule that when a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness.'" Portuondo v. Agard, 529 U.S. 61, 69, 120 S.Ct. 1119, 1125, 146 L.Ed.2d 47 (2000) (citation omitted).  "[W]hen [a defendant] assumes the role of a witness, the rules that generally apply to other witnesses – rules that serve the truth-seeking function of the trial – are generally applicable to him as well." Id. (citation and quotation

4

omitted).  Additionally, it is not improper to comment on the failure of the defense, as opposed to the defendant, to counter or explain the evidence.  United States  v. Chirinos, 112 F.3d 1089, 1100 (11th Cir. 1997).

Here, the prosecutor's remarks were not improper. One set of remarks focused on the defense's, rather than the defendant's, failure to counter or explain the evidence.  Although the prosecutor also commented on Williams's failure to provide his version of events until after he heard all of the evidence, it is not clear from the record that the prosecutor "manifestly intended" to refer to Williams's silence, as the prosecutor could have been attacking his credibility as a witness. Moreover, the remarks were not of such a character that the jury would "naturally and necessarily" take them as  comments on Williams's right to remain silent, because Williams did testify, and the jury could have understood the comments as a challenge to his credibility.  Assuming arguendo that the prosecutor's statements were improper, the error was rendered harmless by the court's curative instructions, and, in light of the instructions, there is nothing to suggest that the jury improperly relied on the prosecutor's remarks.

## II.

Williams argues that his sentence should be vacated because the court committed two procedural errors—in finding that he had two felony convictions,

triggering application of U.S.S.G. § 2K2.1(a)(2), and in applying a two-level

enhancement of his offense level for possessing a stolen firearm. We review a

district court's interpretation of the Sentencing Guidelines de novo, and its factual

findings for clear error. United States v. Vance, 494 F.3d 985, 994 (11th Cir.

2007). When the district court applies the Guidelines in an advisory manner, it is

allowed to make additional factual findings, under a

preponderance-of-the-evidence standard, that go beyond a defendant's admissions.

See United States v. Smith, 480 F.3d 1277, 1281 (11th Cir. 2007). The court's

factual findings "for purposes of sentencing may be based on, among other things,

evidence heard during trial, undisputed statements in the [presentence report], or

evidence presented during the sentencing hearing." Id. Additionally, official

records are entitled to a presumption of regularity. See Webster v. Estelle, 505

F.2d 926, 928-29 (5th Cir. 1976) (pre-Guidelines habeas case).

Section 2K2.1(a)(2) provides for a base offense level of 24 "if the defendant

committed any part of the instant offense subsequent to sustaining at least two

felony convictions of either a crime of violence or a controlled substance offense."

U.S.S.G. § 2K2.1(a)(2). The phrase "controlled substance offense" has the

meaning given that term in § 4B1.2(b) and application note 1 of the commentary to

§ 4B1.2(b). U.S.S.G. § 2K2.1(a)(2), comment (n.1).

Section 4B1.2(b) provides:

> The term "controlled substance offense" means an offense under federal or state law, punishable by a term of imprisonment of more than one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). Florida law, in turn, prohibits any person from selling, manufacturing, or delivering, or possessing with intent to sell, manufacture, or deliver cocaine. Fla.Stat. § 893.13(1)(a)(1). Such offense is punishable by up to 15 years in prison. Id. § 893.1(1)(a)(1); see also id. § 775.082(3)(c).

The Guidelines provide for an increase in a defendant's base offense level by two points if the offense involved a stolen firearm. U.S.S.G. § 2K2.1(b)(4)(A). Knowledge that such a device is stolen property is not a prerequisite to the application of § 2K2.1(b)(4). See U.S.S.G. § 2K2.1, comment. (n. 8(B)) (stating that application of section 2K2.1(b)(4) applies "regardless of whether the defendant knew or had reason to believe that the firearm was stolen . . . . "); see also United States v. Richardson, 8 F.3d 769, 770 (11th Cir. 1993).

It is undisputed that Williams had one controlled substance conviction, a felony, and the documents submitted by the Government support the court's finding, under the preponderance-of-the-evidence standard, that he was convicted

7

of a second controlled substance offense.  As a result, the court properly

determined Williams's base offense level under § 2K2.1(a)(2).  Additionally,

Williams's challenge to the firearms enhancement—that his lack of knowledge that

the gun was stolen should render it inapplicable—is meritless and foreclosed by

this court's precedent.  See U.S.S.G. § 2K2.1, comment. (n. 8(B)); Richardson, 8

F.3d at 770.  Under the prior precedent rule, we are bound to follow binding

precedent "unless and until it is overruled by this court en banc or by the Supreme

Court."  United States v. Brown, 342 F.3d 1245, 1246 (11th Cir. 2003).

     AFFIRMED.